E-FILED
Friday, 23 October, 2026 12:15:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2026-cr-20033 |
| | ) | |
| CAROL AMMONS and | ) | |
| AARON AMMONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS**

NOW COMES Defendant, State Representative Carol Ammons, by and through her attorneys, Mutaqee Akbar and Angela J. Reaney, under Federal Rule of Criminal Procedure 12(b)(3)(B) and the U.S. Constitution and respectfully moves this Honorable Court to dismiss the Indictment and set this Motion for oral argument. In support of this motion, Rep. Ammons states as follows:

## I. Introduction

Rep. Ammons has served Illinois's 103rd district in the Illinois House of Representatives since she was first elected in 2014. On July 7, 2026, the government charged her with eight counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2), and one count of conspiracy to obstruct justice in violation of 18 U.S.C. §§ 1512(k), 1512(b)(3), and 2. Indictment, ECF No. 1.

Relevant here, the wire fraud counts in Counts One to Eight allege that, as part of a scheme to defraud, Rep. Ammons helped local organizations obtain grants that benefited herself and her daughter in violation of Illinois conflict of interest laws. *Id.* at 3, 5. It also alleges unrelated schemes irrelevant to the charges. Count Nine alleges that Rep. Ammons made a false statement to an FBI officer "that she had no knowledge regarding a conflic4t of interest with Hood Vote Neighborhood Transformation [("HVNT")] paying her daughter from a state grant." *Id.* at 9. Count Ten alleges a "conspiracy to obstruct justice" in that Rep. Ammons and Aaron Ammons "conspired with each other . . . to engage in misleading conduct toward another person with intent to hinder and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense, namely wire fraud . . . ." *Id.* 9-10.

Rep. Ammons now moves to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B) and the United States Constitution.[1]

## II. Analysis

A defendant may move to dismiss an indictment for "failure to state an offense" and lack of specificity. Fed. R. Crim. P. 12(b)(3)(B). "An indictment is sufficient if it (1) contains the elements of the offense charged; (2) sufficiently apprises the accused of what he must be prepared to meet; and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v.*

1 For purposes of this Motion to Dismiss, Rep. Ammons is required to accept the Indictment's allegations as true. She does not concede the truth or accuracy of the Indictment's allegations.

*Scheuneman*, 712 F.3d 372, 377 (7th Cir. 2013) (internal quotations omitted). "It is an elementary principle of criminal pleading that where the definition of an offense employs generic terms it is not sufficient to charge the offense in such generic terms but the indictment must state the species—it must descend to particulars." *United States v. Donovan*, 339 F.2d 404, 407 (7th Cir. 1964) (citing *Russell v. United States*, 369 U.S. 749, 765 (1962)).

**A. The wire fraud counts must be dismissed for failure to state claims and violating federalism and due process principles.**

Counts One to Eight charge Rep. Ammons with property wire fraud. The Indictment describes the scheme as "defraud[ing] the State of Illinois, its taxpayers, and donors and contributors to her campaign and [] obtain[ing] money and property by means of materially false pretenses, promises and representations, including by omissions and the concealment of material information." Indictment 3, ECF No. 1. It further alleges that it was the purpose and objective of the scheme that Rep. Ammons helped local organizations obtain grants that benefited her and her daughter in violation of Illinois conflict of interest rules. *Id.* at 3. The Indictment alleges other schemes that are irrelevant to the charged counts. *Id.*

Counts One to Two charge that Rep. Ammons sent two emails "assisting Bridgewater Sullivan Community Life Center ("Bridgewater") with obtaining a state grant and employing [her] daughter." *Id.* at 6. Counts Three to Eight charge a kickback scheme. Counts Three to Five allege that Rep. Ammons caused three cash deposits "from Bridgewater [], funded by a state grant initiated and facilitated by [her], to an individual's

University of Illinois Community Credit Union account, from which a portion was withdrawn in cash and transferred to [her]. *Id.* at 7. Counts Six to Eight charge that Rep. Ammons sent three text messages "to an individual regarding illegal cash payments from the Bridgewater [] state grant initiated and facilitated by [her]." *Id.* at 8.

For the following reasons, the wire fraud counts must be dismissed as they fail to state claims and violate federalism and due process principles.

**1. The wire fraud counts fail to specify the Illinois conflict of interest law at issue and fail to allege that Rep. Ammons engaged in deception or had the victims' money or property as an object of the scheme to defraud.**

The Indictment reflects the government's attempt to end-run Supreme Court precedent limiting the reach of the wire fraud statutes. *See Skilling v. United States*, 561 U.S. 358, 405, 410 (2010) (excluding the failure to disclose a conflict of interest from honest services wire fraud, 18 U.S.C. § 1346); *McNally v. United States,* 483 U.S. 350, 356 (1987) (18 U.S.C. § 1343 covers only property rights and does not extend to intangible rights). The Indictment frames the failure to disclose a conflict of interest and a kickback scheme—both intangible-rights theories—as property fraud. In so doing, the government fails to allege two essential elements—deception and deprivation of property.

The wire fraud statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The government must prove that the defendant "(1) devis[ed] or inten[ded] to devise a scheme (2) to obtain money or property (3) by means of false or fraudulent pretenses, representations, or promises." *Kousisis v. United States*, 605 U.S. 114, 123 (2025) (internal brackets and quotations omitted); *see id.* at 121 ("A defendant commits federal wire fraud . . . only if he both engaged in deception and had money or property as an object of his fraud." (internal quotations omitted)).

First, the government insufficiently alleged deception. The Indictment alleges that, in helping Bridgewater obtain a state grant, Rep. Ammons concealed a conflict of interest in that she and her daughter would benefit financially from the grant. This conduct, however, does not conceivably give rise to a conflict of interest under *any* Illinois conflict-of-interest law. *See United States v. Fontenot*, 665 F.3d 640, 645 (5th Cir. 2011) (dismissing indictment after determining that the alleged false statement was not false under the state law definition); *cf. United States v. Masino*, 869 F.3d 1301, 1306-07 (11th Cir. 2017) (indictment stated a claim where alleged conduct was conceivably illegal gambling under state law).

The Indictment misleadingly and incorrectly defines Illinois conflict-of-interest law: "Under Illinois law, it is a conflict of interest for a person in a position of authority to benefit financially from a decision she could make in her official capacity including through indirect benefits to family members or business with which the person is closely associated." Indictment 2, ECF No. 1. To the extent the Indictment does not cite the Illinois conflict of interest law implicated, the Indictment should be dismissed for lack of specificity.

The government represented to Counsel that the Indictment references the Grant Accountability and Transparency Act ("GATA"), which provides only the following definition:

> "Conflict of Interest" means a situation that arises when a person in *a position of authority over an organization, such as an officer, director or manager*, *may benefit financially from a decision made in that capacity*, including indirect benefits such as to family members or businesses with which the person is closely associated.

44 Ill. Adm. Code 7000.30 (emphasis added). This definition does not apply to Rep. Ammons as the Indictment alleges that she acted only as a state legislator—not as "a person in a position of authority over [HVNT or Bridgewater], such as an officer, director or manager. . . ."

Nevertheless, the Indictment misleadingly alleges that the GATA definition applies to Rep. Ammons, notably omitting portions of the statute explicitly extending the definition only to "a person in a position of authority *over an organization, such as an officer, director or manager*." *Id.* at 2. It further incorrectly states that the GATA definition applies broadly to those making decisions in their "official capacity." Indictment, ECF No. 1. The GATA definition, however, applies only to those who benefit from "a decision made in [their] capacity" as "a person in a position of authority over an organization." 44 Ill. Adm. Code 7000.30.

Nor does the alleged conduct constitute a conflict of interest under the law applicable to those holding elected office:

> (a) Prohibition. It is unlawful for any person holding an elective office in this State, holding a seat in the General Assembly, or appointed to or employed

> in any of the offices or agencies of State government and who receives compensation for such employment in excess of 60% of the salary of the Governor of the State of Illinois, or who is an officer or employee of the Capital Development Board or the Illinois Toll Highway Authority, or who is *the spouse or minor child* of any such person to have or acquire any contract, or any direct pecuniary interest in any contract therein, whether for stationery, printing, paper, or any services, materials, or supplies, that will be wholly or partially satisfied by the payment of funds appropriated by the General Assembly of the State of Illinois or in any contract of the Capital Development Board or the Illinois Toll Highway Authority.

30 ILCS 500/50-13 (emphasis added). To the extent the Indictment references the foregoing conflict-of-interest law, the Indictment misleadingly omits that it applies only to spouses and minor children―not "family members" in general, as alleged. Rep. Ammons's *adult* daughter's employment with HVNT, Bridgewater, or the Independent Media Center, therefore, could not constitute a conflict of interest under Illinois law.

Even if Rep. Ammons was legally required to disclose a conflict, the failure to disclose the conflict does not violate the federal fraud statutes "unless the omission can or does result in some tangible harm." *United States v. Finazzo*, 850 F.3d 94, 109 (2d Cir. 2017). Presumably, the lack of knowledge about a conflict of interest may affect the victims' ability to determine where the money is spent, but "lack of information that might have an impact on the decision regarding where government money is spent, without more, is not a tangible harm . . . ." *Id.* (internal quotations omitted). Here, there is no suggestion that the failure to disclose the conflict caused actual harm to the victims―"the State of Illinois, its taxpayers, and donors and contributors to her campaign"―or that the victims could have negotiated a better deal absent the deception. *See id*.

As there was no conflict of interest and the Indictment fails to allege that Rep. Ammons otherwise made a "material false statement, misrepresentation, or promise, or concealed a material fact," the government has insufficiently alleged that the emails identified in Counts One and Two were used to execute a fraudulent scheme. Moreover, the emails sent in Counts One and Two, "assisting Bridgwater [] with a state grant employing [Rep. Ammons]'s daughter," could not have been used to execute any other scheme alleged in the Indictment.

The other deceptions alleged in the scheme to defraud are irrelevant to the charges and are impermissibly charged as part of the same scheme to defraud. To that end, Rep. Ammons is filing a separate motion to dismiss for duplicity. In short, the wires charged in Counts One to Eight, all alleging that Rep. Ammons improperly received portions of Bridgewater's grant, were not used to execute any scheme to pay family members from campaign donations or to fail to disclose expenditures on D-2 forms. Accordingly, they cannot serve as the requisite deception in Counts One to Eight.

Second, the wire fraud counts fail to allege that the object of the scheme was to obtain money or property from the victims. "The mail and wire fraud statutes require that the object of the fraud is money or property, rather than an intangible right." *United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006).

Here, the Indictment does not allege that the victims suffered the loss of money or a property right. For instance, there is no indication that Rep. Ammons's daughter did not perform her job duties for Bridgewater. And any interest in avoiding conflicts of interest is an intangible interest not covered by the wire fraud statute. *See Cleveland v. United*

*States*, 531 U.S. 12, 15 (2000) ("the thing obtained must be property in the hands of the victim"); *see also United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1521 (7th Cir. 1993); *Skilling*, 561 U.S. at 405, 410 (excluding the failure to disclose self-dealing from honest service wire fraud).

Rather, the Indictment reflects the government's attempt to end-run the Supreme Court's holdings limiting the reach of the federal fraud statutes. The Supreme Court has made clear that the fraud statutes do not "criminaliz[e] all acts of dishonesty by state and local officials." *Kelly v. United States*, 590 U.S. 391, 398 (2020). Historically, the federal fraud statutes reached both property and intangible rights, such as the right to honest services. *See United States v. Yates*, 16 F.4th 256, 266 (9th Cir. 2021). In *McNally v. United States,* the Supreme Court "stopped the development of the intangible-rights doctrine in its tracks," limiting the statute to deceptive schemes intended to deprive a victim of money or property. *Skilling*, 561 U.S. at 401 (citing *McNally*, 483 U.S. at 356); *see also Kelly*, 590 U.S. at 398.

In response to *McNally*, Congress enacted 18 U.S.C. § 1346, which criminalizes a "scheme or artifice to deprive another of the intangible right of honest services." To avoid due process concerns, *Skilling* limited § 1346 to bribery and kickback schemes and rejected the government's argument that § 1346 criminalized "undisclosed self-dealing by a public official or private employee--*i.e.*, the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." 561 U.S. at 404, 409-10 (internal quotations omitted).

After *Skilling*, courts have raised concerns that the government has attempted an "end-run around the Court's holding in *Skilling*" by "recharacterize[ing] schemes to defraud [the victim] of one's honest services . . . as schemes to deprive the [victim] of a property interest." *See Yates*, 16 F.4th at 267. For instance, in *United States v. Yates*, the government charged bank executives with a conspiracy to commit bank fraud under a property-fraud theory. *Id.* at 263. They were alleged to have deceived the victims by misrepresenting the bank's financial condition. *Id.* The Supreme Court rejected the government's argument that the "something of value" of which the victims were deprived was "accurate financial information in the bank's books and records." *Id.* at 265. The right to make an informed decision, the Court explained cannot constitute "something of value." *Id.* "Rather, the scheme must be one to deceive the bank *and* deprive it of something of value." *Id.* (quoting *Shaw v. United States*, 580 U.S. 63, 72 (2016). *Yates* also rejected the government's theory that the "something of value" was the defendants' continued salary: "Permitting the government to recharacterize schemes to defraud an employer of one's honest services—thereby profiting through the receipt of salary and bonuses—as schemes to deprive the employer of a property interest in the employee's continued receipt of a salary would work an impermissible end-run around the Court's holding in *Skilling*." *Id.* at 267 (internal citation omitted).

Here, the government similarly tries to end-run *McNally* and *Skilling* by charging both a kickback scheme and failure to disclose a conflict of interest as property wire fraud. In an attempt to end-run *McNally*'s holding that § 1341 does not reach intangible rights such as "the right not to have *one's fiduciaries* accept bribes or kickback," the

government attempts to characterize the kickback scheme as a direct deprivation of state grant money. Indictment 5, 7-8, ECF No. 1. The scheme alleged by the government, however, deprived only the employee paying the kickback of any property. Moreover, the Indictment does not suggest that Rep. Ammons deceived the state and/or taxpayers with the goal of depriving them of property.

In an attempt to end-run *Skilling*'s holding that honest services wire fraud does not reach undisclosed self-dealing, the government alleges that Rep. Ammons failed to disclose a conflict under a property fraud theory. Nowhere, however, does the Indictment allege that the victims were defrauded of money or property such that it would not have awarded the grant money or would have paid a lower salary to someone other than Rep. Ammons's daughter. *See McNally*, 483 U.S. at 360-61. And, here, deprivation of any organization's or private individual's money or property is irrelevant as they are not alleged victims.

Accordingly, the wire fraud counts charged in Counts One to Eight must be dismissed for failure to state a claim and lack of specificity.

**2. The federal government's attempt to regulate state legislators' ethics violates bedrock federalism principles.**

Federalism concerns arise when the federal government attempts to regulate ethical standards for state legislators. *McDonnell v. United States*, 579 U.S. 550, 577 (2016); *see also Kelly*, 590 U.S. at 403 ("Federal prosecutors may not use property fraud statutes to set standards of disclosure and good government for local and state officials." (internal quotations omitted)). "A State defines itself as a sovereign through the structure

of its government, and the character of those who exercise government authority." *McDonnell*, 579 U.S. at 576 (internal quotations omitted). To that end, it is each state's "prerogative to regulate the permissible scope of interactions between state officials and their constituents." *Id.*

In *Snyder v. United States*, the Supreme Court held that interpreting 18 U.S.C. § 666 to criminalize a state official's acceptance of gratuities would offend "bedrock federalism principles." 603 U.S. 1, 10, 14 (2024); *see also McDonnell*, 579 U.S. at 576-77 (declining to construe a statute "in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of good government for local and state officials"). There, the former mayor of Portage, Indiana, was convicted after accepting a gratuity from a trucking company that the city had awarded two contracts. *Snyder*, 603 U.S. at 9.

The Court first distinguished the states' treatment of bribes and gratuities. "American law," the Court noted, "generally treats bribes as inherently corrupt and unlawful," but its "treatment of gratuities is more nuanced" as different jurisdictions "draw lines in different in places." *Id.* at 5. Some states permit officials to accept gifts below a certain value, while other states prohibit gifts for certain activities; some make it a felony, while others make it a misdemeanor. *Id.* at 8.

The Court continued:

> The carefully calibrated policy decisions that the States and local governments have made about gratuities would be gutted if we were to accept the Government's interpretation of § 666. After all, § 666 covers virtually all state and local officials—about 19 million nationwide. So reading § 666 to

> create a federal prohibition on gratuities would suddenly subject 19 million state and local officials to a new and different regulatory regime for gratuities. In other words, a county official could meticulously comply with her county's local gratuities rules—say, by declining a $200 gift card but accepting a $100 gift card from a neighbor as thanks for her diligent work on a new park—but still face up to 10 years in federal prison because she accepted a thing of value in connection with an official act.
> We should hesitate before concluding that Congress prohibited gratuities that state and local governments have allowed for their officials. After all, Congress does not lightly override state and local governments on such core matters of state and local governance. And the principle articulated by this Court in *Sun-Diamond* fits this case as well: A "narrow, rather than a sweeping, prohibition is more compatible with the fact that" this statute "is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials." 526 U. S., at 409.
>
> In short, federalism principles weigh heavily in favor of reading § 666 as a bribery statute and not as a gratuities law.

*Id.* at 14-15.

Like gratuity statutes, conflict-of-interest laws are nuanced and vary by state. *See Ethics Legislation Database*, https://www.ncsl.org/ethics/ethics-legislation-database (collecting states' conflict-of-interest rules). Some state definitions include all family members; others do not reference family members. Illinois's definition includes spouses and minor children. 30 ILCS 500/50-13. California, on the other hand, includes "the official's immediate family." Cal. Government Code § 87100, 87103. Idaho's definition includes "the person or a member of the person's household, or a business with which the person or a member of the person's household is associated." Idaho Code § 74-403. Michigan does not include family members in its definition. *See* Mich. Comp. Laws §§ 15.302, 15.304.

Here, the federal government attempts to criminalize Rep. Ammons's conduct by falsely characterizing it as a "conflict of interest" under Illinois law. To the extent the government attempts to define Rep. Ammons's ethical duties and criminalize her conduct, it infringes on Illinois's prerogative to define its legislators' ethical duties and must be dismissed for violating fundamental federalism principles.

Accordingly, the wire fraud counts charged Counts One to Eight should be dismissed for violating fundamental federalism principles.

**3. Criminalizing the failure to disclose a conflict of interest raises due process concerns and renders 18 U.S.C. § 1343 void for vagueness as applied.**

"A criminal statute violates the Fifth Amendment's Due Process Clause if it is so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standard-less that it invites arbitrary enforcement." *United States v. Williams*, 106 F.4th 639, 651 (7th Cir. 2024) (internal quotations omitted). "[T]o successfully advance an as-applied challenge, [a party] need only demonstrate that the statute is unconstitutional in the manner as applied to him and the particular facts of his case." *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025).

In *Skilling*, the Supreme Court excluded undisclosed self-dealing from the reach of the honest services wire fraud statute, 18 U.S.C. § 1346, citing due process concerns. 61 U.S. at 410-11. Its analysis is equally applicable to § 1343 as applied in this case:

> If Congress were to take up the enterprise of criminalizing "undisclosed self-dealing by a public official or private employee," Brief for United States 43, it would have to employ standards of sufficient definiteness and specificity to overcome due process concerns. The Government proposes a standard that prohibits the "taking of official action by the employee that furthers his own

> undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty," so long as the employee acts with a specific intent to deceive and the undisclosed conduct could influence the victim to change its behavior. *Id*., at 43-44. See also *id*., at 40-41. That formulation, however, leaves many questions unanswered. How direct or significant does the conflicting financial interest have to be? To what extent does the official action have to further that interest in order to amount to fraud? To whom should the disclosure be made, and what information should it convey? These questions and others call for particular care in attempting to formulate an adequate criminal prohibition in this context.

561 U.S. at 411 n.44.

Here, the legislature similarly failed "to employ standards of sufficient definiteness and specificity to overcome due process concerns." *Id.* Nowhere does the statute define a conflict of interest. Rather, individuals are left to guess as to what conduct is criminalized. It is especially troublesome where, unlike bribery, there are numerous nuanced definitions for conflicts of interest. *See Ethics Legislation Database*, https://www.ncsl.org/ethics/ethics-legislation-database (collecting states' conflict-of-interest rules).

Accordingly, the wire fraud counts charged in Counts One to Eight should be dismissed as the statute is void for vagueness as applied to Rep. Ammons.

**B. The false statement charge must be dismissed as Rep. Ammons's statement that she was unaware of a conflict of interest was not false as a matter of law and could not be material to any investigation as there was no conflict of interest under Illinois law.**

Count Nine charges Rep. Ammons with making a false statement in violation of 18 U.S.C. § 1001(a)(2) in that she "willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction

of the executive branch of the Government of the United States, by stating to a Special Agent of the Federal Bureau of Investigation that she had no knowledge regarding a conflict of interest with [HVNT] paying her daughter from a state grant, when Ammons knew full well that individuals from the State of Illinois and [HVNT] had previously discussed the conflict of interest with Ammons." Indictment 9, ECF No. 1.

Section 1001(a)(2) provides: "Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . (2) makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years . . . ."

As set forth in Section II(A)(1) of this Motion, there was no conflict of interest under Illinois law when Rep. Ammons helped HVNT obtain a grant from which HVNT would pay her daughter's salary. *See* 30 ILCS 500/50-13 (elected officials); 44 Ill. Adm. Code 7000.30 (GATA). Accordingly, her alleged denial of knowing there was a conflict of interest with the HVNT contract could not be false. The Indictment's allegation that a conflict was discussed does not render Rep. Ammons's statement false where there was, in fact, no conflict. Moreover, to the extent that Count Nine fails to cite the relevant Illinois law, it should be dismissed for lack of specificity.

In any event, as there was no conflict of interest, denial of knowing about a nonexistent conflict of interest could not be material to any conceivable investigation. *See United States v. Wilson*, 879 F.3d 795, 807 (7th Cir. 2018) (A statement is material if it "had a natural tendency to influence, or was capable of influencing, the federal agency."

(internal brackets, ellipsis & quotations omitted)). A statement is not made material simply because the government and law enforcement erroneously believed that there was a conflict of interest under Illinois law that could be relevant to the wire fraud investigation charged in Counts One to Eight.

Accordingly, false statement count charged in Count Nine should be dismissed for failure to state a claim and lack of specificity.

**C. Count Ten, charging a conspiracy to obstruct justice, must be dismissed as it fails to allege an agreement to tamper with a witness, fails to identify a witness and/or relevant investigation, and fails to allege that either Rep. Ammons or Aaron Ammons employed "misleading conduct" to tamper with a witness.**

Count Ten charges Rep. Ammons and Aaron Ammons with "conspiracy to obstruct justice" under the part of § 1512(b)(3) that criminalizes the use of "misleading conduct" to tamper with a witness. Indictment 9-10, ECF No. 1. The Indictment provides that "[f]rom at least on or about May 21, 2024, and continuing through at least June 15, 2025," Rep. Ammons and Aaron Ammons "knowingly and intentionally conspired with each other and others, both known and unknown to the grand jury, to engage in misleading conduct toward another person with the intent to hinder and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense, namely, wire fraud as set forth in Counts One through Eight of this Indictment." *Id.* The Indictment lists the following overt acts:

> a. On or about May 24, 2024, Carol Ammons, with Aaron Ammons present, falsely claimed to a Special Agent of the Federal Bureau of Investigation that she had no knowledge regarding a conflict of interest with [HVNT] paying her daughter from a state grant.

> b. On or about February 17, 2025, Aaron Ammons advised a potential witness that there is "nothing illegal" about friends giving friends money regarding illegal cash kickbacks paid to Carol Ammons from the Friends of Carol Ammons political committee. Aaron Ammons communicated with the potential witness on a paper note that Aaron Ammons destroyed after showing it to the potential witness.
>
> c. On or about April 21, 2025, with Carol Ammons present, Aaron Ammons advised a potential witness that they should communicate in code words about the ongoing federal investigation and that Aaron Ammons would look into cash deposits that Carol Ammons made around the dates that she received illegal cash kickbacks.
>
> d. On or about June 9, 2025, with Carol Ammons present, Aaron Ammons asked a potential witness about illegal cash payments given to Carol Ammons before directing the witness to "muddy the waters" with the Federal Bureau of Investigation to obstruct its ability to trace the illegal cash payments to Carol Ammons.
>
> In violation of Title 18, United States Code, Sections 1512(k), 1512(b)(3), and 2.

Indictment 10-11, ECF No. 1.

Section 1512, entitled "Tampering with a witness, victim or an informant," encompasses tampering attempted or achieved by means of intimidation, threats, corrupt persuasion, and/or misleading conduct. Section 1512(b)(3) covers the foregoing conduct where the intent is to "hinder, delay, or prevent the communication to a law enforcement officer . . . information relating to the commission or possible commission of a Federal offense." *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005). A § 1512(k) conspiracy contains the following elements: "(1) an agreement between the defendant and at least one other person to pursue the object of the conspiracy, (2) the defendant's knowledge of the unlawful purpose of the agreement, and (3) that an overt

act was taken by one of the conspirators toward carrying out the object of the conspiracy." *United States v. Age*, 136 F.4th 193, 214 (5th Cir. 2025).

Here, the Indictment is fatally defective as it fails to allege an agreement to tamper with a witness. Rather, the Indictment alleges that Rep. Ammons was merely present when Aaron Ammons attempted to tamper with the witness. Mere presence, however, is not sufficient to allege a conspiracy. *See United States v. Diaz*, 876 F.2d 1344, 1352 (7th Cir. 1989) ("Mere association, knowledge or approval of a conspiracy is not sufficient to prove a defendant's guilt."); *see also United States v. Jenkins*, 675 F. Supp. 2d 647, 652 (W.D. Va. 2009) (indictment for § 371 conspiracy fatally defective where it "offer[ed] no assurance that the Grand Jury found that there was ever an agreement, and therefore a conspiracy").

Even if the Indictment alleged an agreement, it must still be dismissed as the alleged conduct is not criminalized under § 1512(b)(3). Section 1512(b)(3) is a witness-tampering statute—not a general obstruction-of-justice statute. *See United States v. Weiss*, 630 F.3d 1263, 1273 (10th Cir. 2010). The only conduct attributed to Rep. Ammons—that she falsely claimed to an FBI agent to have no knowledge of a conflict of interest—does not implicate tampering with any witness and could not be part of a conspiracy to tamper with an unrelated individual with whom Aaron Ammons is alleged to have tampered. Moreover, as there was no conflict of interest, *see* § II(A)(1), her statement was not false and, therefore, could not be "misleading conduct."

Neither does the conduct attributed to Aaron Ammons fall with § 1512(b)(3). Section 1515(a)(3) defines "misleading conduct" as:

> (A) knowingly making a false statement;
>
> (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement;
>
> (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;
>
> (D) with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or
>
> (E) knowingly using a trick, scheme, or device with intent to mislead.

18 U.S.C. § 1515 (a)(3). The Indictment's allegations, however, do not allege that Aaron Ammons's attempted to mislead the witness through the foregoing means. Rather, the Indictment alleges only that he advised the witness "that there is 'nothing illegal' about friends giving friends money," told the witness "that they should communicate in code words," and asked the witness to "muddy the waters" about alleged illegal cash payments. Indictment 10-11, ECF No. 1. There is no allegation that he made a false statement to or attempted to mislead the witness.

The Indictment also fails to identify the federal investigation in which Rep. Ammons and Aaron Ammons allegedly conspired to tamper with the witness or the witness at issue. *See United States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985) (§ 1512 indictment fatally defective where it failed to "identify *any* proceeding" which defendants were attempting to obstruct (emphasis in original)); *see also United States v. McGarity*, 669 F.3d 1218, 1240 (11th Cir. 2012); *United States v. Shively*, 927 F.2d 804, 812-13 (5th Cir. 1991). It is unclear whether Rep. Ammons is charged with conspiring to tamper with

the witness in the investigation against herself, her husband, or someone else entirely. To the extent the Indictment fails to allege the investigation or the witness, the Indictment should be dismissed for lack of specificity.

Accordingly, the conspiracy to obstruct justice count charged in Count Ten must be dismissed for failure to state a claim and lack of specificity.

## III. Conclusion

WHEREFORE, based upon the foregoing, Rep. Ammons requests that the Court enter an order dismissing the Indictment and/or set this matter for oral argument.

Respectfully submitted,

/s/ Angela J. Reaney
ANGELA J. REANEY
MUTAQEE AKBAR

COUNSEL FOR DEFENDANT

Angela J. Reaney
Reaney Law Office LLC
P.O. Box 207
Christopher, IL 62822
(618) 713-6258
areaney@reaneylaw.com

Mutaqee Akbar
Akbar Thomas, LLC
619 N. Copeland Street
Tallahassee FL 32304
(850) 561-6900

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Angela J. Reaney
ANGELA J. REANEY

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing Motion contains 5,769 words, including all headings, footnotes, and quotations, as determined using the word count of the word processing system used to prepare the document.

/s/ Angela J. Reaney
ANGELA J. REANEY